# Mill Village Borough *v.* Nypano Railroad Co., Appellant.

*Streets—Dedication—Railroads—Obstruction of public street—Embankment—Injunction.*

A railroad company will be permanently enjoined from constructing a high embankment over such part of a borough street as has been recognized by the borough as a public street or used as such by the public, although it had never been formally laid out.

Argued April 25, 1916.   Appeal, No. 334, Jan. T., 1915, by defendant, from decree of C. P. Erie Co., Sept. T., 1913, No. 8, in equity, granting injunction in case of the Borough of Mill Village v. Nypano Railroad Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for injunction.

The facts appear in the following findings of fact and conclusions of law by WALLING, P. J.:

The bill in this case was filed to restrain the defendant from obstructing an alleged public highway.

The case was heard upon bill, answer, replication and testimony.

The facts are found as follows:

1. The plaintiff is a small borough located in the southern part of Erie County, and the defendant is a railroad corporation with a line of railroad extending through said borough.

2. In 1912, the defendant company proceeded to reconstruct its line of railway and in so doing secured a new right of way extending through said borough, crossing diagonally South Depot street so called; and the main controversy here is whether said alleged street at the point so crossed, is a public highway.

3. The two principal streets in said borough are Center street, extending through the borough in an easterly and westerly direction; and Main street, extending through the borough in a northwestwardly and southeastwardly course. The depot, on the old line of defendant's railway, is situated in the north side of said borough and there is a well-known public street called Depot street, extending therefrom in a southerly direction to Center street. Plaintiff contends that it continues as a public street southwardly from Center street for a distance of some one thousand feet and thence turns southwestwardly until it intersects with Main street at a point near where the public school building of said borough is located. The said new line of railway intersects said alleged Depot street at a point some three hundred feet south of Center street and crosses the same at an elevation of eighteen feet. The defendant denies that Depot street at this point is a public street, and whether it is or not, is the important question in this case.

4. There is no record of any action having been taken

by the borough authorities laying out Depot street as a public highway, but there was an old map now lost, made by the direction of the borough over forty years ago, on which so called Depot street from Center street to Main street, appears to have been shown as a highway; and in making conveyances beginning as far back as 1871, owners of the abutting property have, in such conveyances, made reference to this street, sometimes referring to it as Depot street, or as the center of Depot street, and in some instances referring to it as a proposed street, or as an intended street. Such conveyances indicate an intention on the part of the property owners to dedicate the land included within the boundaries of the so-called Depot street, as and for a public highway.

5. Extending southwardly from Center street to and including a portion of what is now the defendant's new right of way, such street has for many years, been opened, used and well marked upon the ground as a highway. Several lots were sold on the east side of the street south of Center street, on which residences were built and have been occupied for many years. The borough recognized this portion of Depot street as a public highway many years ago by ordering the property owners to construct sidewalks therein.

6. A few hundred feet south of the said new right of way at the point in question, there is a creek which crosses the said alleged Depot street. In 1871 Francis N. Runnels purchased a piece of land containing sixty-nine acres and including the south portion of the land occupied by said new right of way at this alleged crossing, and also the land to the south thereof including Depot street so called, and the land on both sides thereof to and beyond said creek. The deed to him refers to a point near the creek as the center of Depot street. Over thirty years ago, Mr. Runnels caused fences to be constructed extending along on both sides of said alleged street from the south end thereof, as well marked upon the ground as above stated, southwardly across what is now this

new right of way and on to the vicinity of said creek. Such fences remained there for some years until finally the one on the east side rotted down and disappeared, but as we understand the facts, the west fence so built, has been kept up until the present time. Later Mr. Runnels died and his son, Charles J. Runnels, became and still is the owner of said land.

7. Said alleged highway, where the new right of way is located and to the south thereof to the creek, was occasionally used as a highway by the public, sometimes to get water from the creek, and sometimes people, especially pedestrians, would pass along the same. It was kept open for many years so that it could be used but was never improved as a roadway. No bridge was ever constructed across said creek at this point and from there south, there was never anything resembling a highway upon the ground. In fact, there was for many years and until since the commencement of this suit, a fence extending along about the center of this alleged highway from or near the creek southwardly and some trees also standing therein. In more recent years there was a wire fence constructed across this alleged highway, we believe near the new right of way, and thereafter people wishing to pass over this alleged road, had to open something in the nature of a gate constructed in connection with the said wire fence.

8. The intention of having South Depot street as a public street seems never to have been abandoned, and when the railroad company started to occupy said new right of way and to construct thereon an embankment, the borough authorities took prompt steps to prevent the obstruction of said street, and since this suit has been pending, the borough authorities have taken proper action looking to the opening and improvement of said South Depot street so-called, and have caused some work to be done therein at the expense of the borough, but as yet no bridge has been constructed across such creek. Vehicles have sometimes driven through the creek but ow-

ing to banks and sometimes high water, it is not practicable to use said alleged South Depot street without the construction of a bridge over the creek.

9. In our opinion, Depot street having at one end a railroad depot, and at the other a public school building, also used as a place for holding elections, is necessary as a public street for the accommodation of the public and the proper development of the borough, and if occupied now by an embankment eighteen feet in height, the expense of hereafter opening it as a public street would be a great hardship upon the borough. The defendant proposes in the construction of this embankment, to leave a cattle pass for the use of Mr. Runnels' farm of some fifteen feet in width; and the extra expense of leaving it open as a roadway, will entail no serious hardship upon the defendant, especially as it can be constructed with piers at the curb line.

### LEGAL CONCLUSIONS.

First: That the references to said Depot street in the conveyances above mentioned, constitute the dedication thereof as a street and so far as recognized by the borough or used as a street by the public, it has become and is, a public street.

Second: Under the facts above found, Depot street at the place where crossed by the new right of way of the railroad company, is and was when so crossed, a public highway.

Third: That such street cannot be lawfully obstructed by the railroad company.

Fourth: That such company may lawfully cross said street by the construction therein of a crossing as provided by statute.

Fifth: That a decree should be made making permanent the injunction heretofore granted in this case at the cost of the defendant company.

The lower court entered a decree granting the injunction prayed for.    Defendant appealed.

*Error assigned,* among others, was the decree of the court.

*George F. Davenport,* with him *W. Pitt Gifford,* for appellant.

*J. M. Sherwin,* with him *W. S. Carroll,* for appellee.

PER CURIAM, May 15, 1916:

This decree is affirmed, at the costs of the appellant, on the facts found and the legal conclusions reached by the learned chancellor below.